You are in front of the 1st Division of the 1st District Appellate Court of Illinois. We are here in Case 1-22-1057, State Farm Mutual Automobile Insurance Company v. Richard Arroyo. My name is Terry Lavin. I'll be presiding today along with my colleagues, Justice Aurelia Puczynski and Justice Mary Ellen Coughlin. What we'd like to do is to give each of you approximately 10 minutes to make your arguments without interruption, and then we'll ask you whatever questions we have, if any. And the appellant should save, you know, five minutes for rebuttal. So with that, we're ready to proceed. Good afternoon, Your Honors, and may it please the Court. My name is Jack Kennedy, and I represent Officer Arroyo in this case. The City of Chicago paid Officer Arroyo's medical bills after he sustained serious injury in an on-duty accident caused by an uninsured motorist. The City's obligation to make those payments, and Officer Arroyo's right to them, flowed solely from a contractual undertaking made by the City in a collective bargaining agreement with the Police Union. These bargained-for contractual benefits are beyond the reach of State Farm's set-off provision, and the judgment should be reversed. I will begin this afternoon by explaining that the controlling legal question in this appeal is settled by the Illinois Supreme Court's decision in Gillen v. State Farm. I will then explain that under Gillen, the Court should reverse the judgment because State Farm's set-off provision is not sufficiently clear, definite, and specific to reach Officer Arroyo's bargained-for benefits. Turning first to the controlling question, both sides to this appeal rely on the Illinois Supreme Court's decision in Gillen, which analyzed a prior version of this policy. We commend the Gillen decision of this Court because it clearly identifies on page 395 of the opinion the controlling legal question. That is, whether the average person for whom the policy is written would reasonably understand that State Farm's liability for uninsured motorist coverage would be reduced by payments made pursuant to, here, a collective bargaining agreement. The Gillen Court emphasized that the set-off provision must be clear, definite, and specific, and the Court explained in the very next paragraph of its opinion that even if the set-off clause reasonably construed could convey to the average policyholder that the liability would be reduced by the payments at issue, that at best results in ambiguity, which must be resolved in favor of the policyholder. So the question here is whether the set-off provision is sufficiently clear, definite, and specific that it would convey to the average person for whom the policy is written that State Farm's liability would be reduced for, here, what are contractually bargained-for benefits. This Court should resolve that question in the negative and reverse the judgment. The parties here agree that Officer Arroyo's benefits were paid pursuant to a collective bargaining agreement. Page 89 of the record, State Farm's answer to Officer Arroyo's counterclaim states that payments of at least $68,594.70 for medical care were made under the collective bargaining agreement. So there is no dispute that these payments were made pursuant to the collective bargaining agreement. State Farm's argument, as I understand it, is that these benefits were paid pursuant to the collective bargaining agreement, but they were also paid pursuant to the pension code and the municipal code. But when we look at the code sections that State Farm cites, they contained merely permissive language. The pension code states that the corporate authorities may provide by ordinance. The Chicago Municipal Code states that the controller may authorize. This language is neither necessary nor sufficient to trigger the payments the city made. And State Farm has failed to show that either provision was invoked or in any way relied on by the city in fulfilling its contractual obligations. But even if it were all of the above, that the city paid Officer Arroyo's medical benefits pursuant to the pension code, municipal code, and the collective bargaining agreement, that would not justify a finding in favor of State Farm. On the contrary, the language of the set-off provision is still not sufficiently clear, definite, and specific to reach contractually bargained-for benefits that the pension code and municipal ordinance merely permit, but do not compel a public employer to enter into and provide. Put another way, the average person for whom the policy is written would not read the words workers' compensation law, pension code, municipal ordinance, labor union fund, disability benefits law, or similar law to clearly encompass bargained-for medical benefits bestowed by a contract that were not required by any statute. Neither the pension code nor the Chicago Municipal Code required the City of Chicago to pay a dime. That obligation flowed solely from the contract. And so, had the city failed to pay Officer Arroyo's medical benefits or refused to pay them, his claim would be one for breaching that collective bargaining agreement. It would not be that the city had violated any statute or ordinance. And the language of the set-off refers to laws. There's no reference whatsoever to contractual benefits, public employee benefits, or anything of the sort. The city was not obligated to pay a dime in expenses but for the contractual benefits. And so, we urge this court to find that the payments here are beyond the reach of the set-off provision and reverse the judgment, and enter judgment in favor of Officer Arroyo or remand with instructions for further proceedings consistent with the court's opinion or order. And with that, I would welcome any questions the panel may have. Okay. Mr. Kennedy? Colleagues, questions? Mr. Kennedy? I have a question. Mr. Kennedy, wouldn't a reasonable person be able to construe the set-off provision, an amount paid or payable to or for the insured under any workers' compensation law? Why is it not reasonable to construe that as pursuant to? And doesn't the Supreme Court in Guillen suggest that that is exactly how the court was construing those provisions? We believe that under a law and pursuant to a law are synonymous, so we do agree with that, Your Honor. But our point is that these benefits were paid pursuant to the collective bargaining agreement. That was something that was bargained for between the police union and the city. How could they pay them if not for the pension code and the municipal code provisions? What authority would they have? They would have the authority by the fact that they entered into this collective bargaining agreement. The pension code did not require the city to pay medical benefits. The municipal ordinance did not require the city to pay medical benefits. It merely says the city may authorize payments.  But the city would have no authority to authorize the collective bargaining act but for those provisions. Well, I'm not sure. I'm asking the question. Okay. Your Honor, there must be a municipal ordinance in order for the city to enter into a contract. I think that is true. But State Farm has not shown that either of these provisions was triggered in this specific case. And even if the court were to find they are involved in this case, neither provision actually required a dime to be paid. It flows solely from the collective bargaining agreement. So our point is that these benefits that State Farm is seeking to set off are contractual in nature. The police union and the city could have decided the city is only going to pay 50% of the expenses or 10% of the expenses. Here it decided they're going to pay 100% of the expenses. But that was bargained for earned employee benefits as part of that collective bargaining agreement. And because there's no language in the setup provision which addresses contractual benefits, only addresses statutory schemes. And the point here is that the statutory language State Farm cites did not require a dime to be paid. It's only the collective bargaining agreement that creates the right of payment, which is why I say that Officer Arroyo, had the city not paid, could not sue that you violated the pension code or you violated the municipal ordinance because the language is wholly permissive. It says the controller may authorize. It doesn't require the controller to actually pay a dime. Only the collective bargaining agreement required that. Mr. Kennedy, are you aware of any program that the city of Chicago's controller has set up under this authorization in the city code to pay these medical expenses? Absent a collective bargaining agreement for some employee that doesn't have a collective bargaining agreement. Is there a program that is set up that the controller manages? Are you aware of any? I'm not aware of any in the RAC would doesn't, you know, identify any of the what the parties have cited here is the collective bargaining agreement. I mean, page 134 of the RAC would State Farm and its motion for summary judgment quotes, the employer agrees to pay all hospital, medical and prescription costs of an officer who is unrelated to absence for duty or occupational disability purposes, all at no cost to the employee. The employer shall make pension contributions on behalf of the employee as if the employee had remained in active service. This is these are contractual benefits and to reach these benefits. Something more was required than a generic reference to workers' compensation law, pension code, municipal ordinance. They would needed to be language. Okay, State Farm wrote this contract. They could have easily written in or pursuant to collective bargaining agreement or other contractual dues, the city to pay. They didn't do that, right? Correct, Your Honor. And they could have written from any source, regardless whether contractual or statutory. They are the ones who decided to create this list and a collective bargaining agreement is not in the list. And so our point is it is reasonable to read this policy as excluding contractual benefits where everything in the list are all statutes. It says or other similar law. These are all positive laws. These are bestowed by statute, not granted by contract. And our point is that although there are statutes which enable the city to enter into contractual negotiations and provide benefits as a matter of contract, contracts, collective bargaining agreements, public employee benefits are not listed in this list. And State Farm wrote the list. So they're stuck with their list. And Gillen makes clear that as long as our interpretation in favor of the policyholder is a reasonable interpretation, it doesn't have to be the only plausible reasoning of the policy language. As long as it is a plausible reading, it controls. If there are no further questions from the panel, I would reserve the remainder of my time for a call. OK, let's hear from the Eppley. You're muted. There we go. Very good. First of all, thank you, your honors. And please, the panel. Brent Tickham on behalf of Eppley State Farm Council has laid out for you, at least generally, what it's all agreed to in regards to what this matter arises out of. This is an allegedly injured Chicago police officer that was injured by an uninsured motorist. They received medical treatment, which was paid by the city for injuries allegedly arising out of this accident, and they have made an uninsured motorist claim on their own personal policy. The key to this entire matter, and I think on this point, council agrees, since it's what we've been talking about, is a set-off provision that reduces the coverage, reduces the policy limits, that reads as follows. Any amount paid or payable to or for the insured, in which be royal, under any workers' compensation law, pension code, municipal ordinance, labor union fund, disability benefits, or similar law, shall reduce the amount payable under this coverage. In this particular instance, the amounts paid by the city was paid under the pension code, which is quoted, says that municipalities can set up payment systems for these sort of injuries, and the city of Chicago, in fact, specifically did under its municipal code, which authorizes the comptroller to enter into one or more agreements to secure the pay thereof, which in this specific instance, they did via a collective bargaining agreement with the fraternal order of the city of Chicago police. Be that as may, that is, while that is a conduit for how this was paid, the operative word, which in this particular insurance policy, is, is it paid under the pension code and or a municipal ordinance? And the answer is yes. Appellant doesn't deny that it's paid under these different laws. The under means that it's authorized by the plain regular definition of the preposition under means authorized amongst its meanings. And clearly, that is exactly what the pension code does through the municipal code, which are both specifically listed within the set off provision that's at issue here. As a means for how this individual was paid. It's simply confusing and irrelevant. This permissive language, there's nothing about under that requires anything to the fact that it shall versus may. It's simply a question of whether or not these payments were authorized by the pension code or municipal ordinance, which everyone is in agreement, they were. That is the sum, should be the sum total of the issues before us here today. Should also be noticed that the central case that's quoted by both appellant and appellee here is Gillen, which also notes in its very first paragraph regarding background notes specifically that the payments in that case, these were also in this case, a paramedic through the fire department, but similarly situated were authorized by the municipal ordinance and adopted in accordance with the with the pension code there in the very first paragraph of Gillen, they affirmatively the Supreme Court found that in fact this is under the pension code and the municipal ordinance. There is nothing that is unambiguous regarding this language. There is only one reasonable interpretation. The average person in reading this knows that if it's paid pursuant to under authorized by the pension code or. Municipal ordinance. Then this set off applies. Which we're all on agreement with, I suspect. There's question questions will be levied regarding. Well, why don't you add the CBA as well? Well, to answer that that question, I guess. Ahead of time is one that there's frankly no need to do so. I mean, it's it's already clearly enunciated within the policy. The two other provisions within the law that are authorizing these payments. But second of all, in reading the actual. Municipal code and the pension code. It allows us to set up this system. It doesn't specifically command or or allow only a CBA agreement. The municipal code itself references agreements. And in order to. I guess be inclusive, you'd have to list. Basically, an unimaginable multitudes of any sort of. Possible agreement or manner in which the pension code and municipal code would be. effectuated here and if. Perchance one of those multitudes is not listed, you would run into the exact same. Claim that we are hearing from the appellant is that, well, you didn't list this. This explicitly and as such. It should be excluded and you'd run it run into my lens rusty. So I'm going to use the English translation of the expression of one is to the exclusion of. Of others. And as we see that there is. 1300 municipalities throughout the state of Illinois that could all have individual different types of contracts, different agreements, different ways to effectuate. The pension code and the. Their own municipal ordinances. And you can't I don't think this court would want or that any policy holder. Would want the listing of every single. contractual or other otherwise agreement that allows for payments that are made under. The pension code and or a municipal municipal ordinance. As such. The last thing I want to point out to this court to the panel before I turn over to questions is. Gillen was basically presented with a situation where. Other law was being relied upon and it was found that that had more than one. Reasonable interpretation and wasn't clear enough to enforce this set off and. The court in Gillen even specifically says. Hey, these payments are made pursuant to a pension code and municipal ordinance, you could say. This applies to payments made that were authorized by the pension code. It says it clearly within Gillen. And taking a cue from our Supreme Court here in the state of Illinois. That is exactly what this set off now. Read so it is clear it is taking into account. The guidance and the holding of Gillen to correct any. Ambiguity or difficulty in an average person might understand. Regarding other law and turning it into something that the court made explicitly clear. That they could do to implement. This sort of set off in this situation by specifically including pension code. Hey, when was that done? When was that done? The Gillen case was decided in 2005. When was the change made? I know I don't. It would be. It was subsequent to 2005. I believe it was. 08 or 09, but I would not know. I don't want to misspeak to the panel. Clearly before this accident, though. Oh, yes, yeah, no doubt about that. Absolutely. There's been no no one. Has denied that this is the operative language that was within this policy and was in the policy at the at the time of the loss. So State Farm had an adverse ruling on the Supreme Court on a similar issue and then of this contract in order to make sure that that didn't happen again. It was just a one off, right? Well, I don't know necessarily. I'd say one off, but I understand what you're what you're getting at your honor that what they did is they wanted to correct what was found to be an ambiguity so that the intentions of the parties could be effectuated and that there would be no question as to the meaning or any possible latent ambiguity. OK, that's all the questions I have. I have a question. While they were doing that. They could have easily added or any other contract or agreement, just sort of generic. Open ended any any contract, any agreement, any law, any statute, then we wouldn't have this problem. But State Farm didn't do that. State Farm listed specifically what was in the set off and they included in the set off some things, but they did not include any contracts. And you're saying, oh, well, Mr. Kennedy certainly couldn't want them to list every single contract with every village and hiring agency in the state of Illinois of public employees. And I agree with that. But generic language like any other contract or collective bargaining agreement was certainly something that State Farm could have, and in my opinion, probably should have added when they went to the trouble to rewrite this policy because they got caught, you know, on a wares and gone. It is a question why why did they not do that or why is that necessary? Is that why don't you think it's necessary? Well, there are two reasons. One, it still does have the catch all or similar or similar law, which is wait, or similar law here. We're talking about a civil, a strictly contractual agreement. It's not a law. It's a contract. Now, the city is allowed has allowed itself to be bound by its contract, but it is still a contract. It's not a law. So laws doesn't help me. I'm not looking for laws. I'm looking for one that says some other agreement that's not a law. Well, the a specific quote will not exist. What we do have is that it is to be applied again, applied in relation to payments that are made under the pension code and the municipal ordinance, which is what it with all with all due respect, it is it's paid under there, which means authority by the authority of and without the pension code, without the municipal ordinance in terms of the city of Chicago. These payments would not have been made because the collective bargaining agreement would have been allowed because it was not authorized by the law. So it's the city's authorization to enter into a collective bargaining agreement is not part of the pension code and is not part of the controller's authorization to administer a program. It's not it's not part of it. It's something else. I'm sorry. And if I was unclear, I apologize. What I meant is that aspect of the collective bargaining agreement is that that allows for the payment of these bills is authorized by the pension code and by municipal ordinance. The collective bargaining agreement is allowed, but the payment was not made pursuant to the pension code. If there were no collective bargaining agreement, what would have happened? The same thing, if there was no pension code or if there was no city ordinance, there would be no payment because there'd be no authorization. You need all three in this regard. And it doesn't say could have said that in there. They wrote the policy. They could have said or any other collective bargaining agreement or agreement between the parties. Maybe, you know, an employee that's not in the union, an employee that's in the union be part of this set off to. If the city decided to pay the medical bills. Sure, because that'd be a separate agreement authorized under the pension code and under the municipal ordinance, which is exactly sort of my point here that it talks about agreements and that to try and shoehorn generic what these types of agreements are. They could be any number of types of agreements, whether it be an individual making a separate agreement or contract, whether it be a. Collective bargaining agreement that we're dealing with here, what you have is 1300 municipalities that have fire and police, that's 2600, and that's to say nothing as your honor has just pointed out that there could be additional agreements being made with individuals that could rise out of any number of different scenarios that. Simply, you can't make that exhaustive list. And so what State Farm did is do exactly what Gillen said one should do, which is say if made. They were authorized the payments are authorized by the pension code, which Gillen found that the payments are authorized by the pension code and the municipal code to say that, and that's exactly what they said. Any other questions. OK, let's hear a rebuttal. Thank you, your honors. We do not concede that the payments here were made pursuant to the pension code and the municipal code section that State Farm sites those code sections consists solely permissive language and State Farm has not shown that either were triggered here that language was neither necessary nor sufficient to trigger the payments the city made council said you need all three you need the pension code you need the municipal ordinance and then you the collective bargaining agreement that is just emphatically not correct as a matter of Illinois law the city of Chicago is a home run home rule municipality it can enter into contracts it doesn't need a state statute to enter into a contract. Even if the court were to find that these payments were made pursuant to the pension code the municipal code and the collective bargaining agreement. Our point is, and I think Justice Pachinksi questions went to this. That the list of items in State Farm set off list they're all positive laws, none of them is an agreement, none of them is a contract, and our position here is that the bargain for benefits here were contractual in nature. I think it's most obvious when you think of what would have happened if the city hadn't done what it was supposed to what if it refused to pay his benefits. Officer Arroyo could not sue saying you violated the pension code because the pension code says you may provide for payments to injured officers. He could not have sued under the municipal ordinance State Farm relies on which says the controller may authorize may authorize expenses. That's totally permissive. It doesn't direct the city to do anything. What his claim would have been would have been for breach of contract for violating the collective bargaining agreement, because it is what creates the right to the payments it's what obligated the city and it's what gave Officer Arroyo the right to receive payments. And because State Farm's set up language does not address contractual arrangements, whatsoever. We're not saying they need to identify, you know, here are the 1400 agreements or here are the 1400 ordinances, but it has to be sufficiently clear definite and precise to convey to an average person that these contractually bargained for benefits were subject to a setup and its language simply does not do that. Okay. Thank you very much. We will talk amongst ourselves and review the matter and get back to you forthwith with our decision. Thank you very much. We are adjourned.